UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RONALD E. PECK, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Case No. 13-00073 (RJL) |
| SELEX SYSTEMS INTEGRATION, INC., *et al.*, | ) ) ) |
| Defendant. | ) |

**FILED**
MAR 24 2016
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

<u>MEMORANDUM OPINION</u>

(March 23ʳᵈ, 2016) [Dkts. ## 45, 50]

Plaintiff Ronald E. Peck ("Peck" or "plaintiff") brought this suit against defendant SELEX Systems Integration, Inc. ("SELEX") in D.C. Superior Court, alleging three contract claims arising from plaintiff's employment termination. SELEX removed the case to this Court on January 17, 2013 on the grounds that Count II's claim for plaintiff's accrued Plan benefit, pled in the original complaint as a common law breach of contract claim, arose under ERISA. Notice of Removal Ex. A; Am. Notice of Removal [Dkts. ## 1-1, 6]. On January 28, 2013, SELEX moved to dismiss Count II on ERISA preemption grounds. Defs.' Mot. to Dismiss [Dkt. # 8]. On February 19, 2013, plaintiff voluntarily dismissed that claim with prejudice. Stipulation of Dismissal of Count II with Prejudice [Dkt. # 11]. Pursuant to the Court's order allowing amendment, plaintiff filed his Amended Complaint on January 28, 2014, adding new defendant Selex Sistemi Integrati, Inc. Key Employee Deferred Compensation Plan ("the Plan") (together

"defendants"), and including an ERISA claim as Count II. Min. Order, Jan. 28, 2014; Am. Compl. [Dkt. # 33]. Currently before the Court are Defendants' Motion for Summary Judgment on Count II of Plaintiff's Amended Complaint [Dkt. # 44], and Plaintiff's Motion for Summary Judgment [Dkt. # 45]. Upon consideration of the pleadings, record, and relevant law, I find that defendants are entitled to summary judgment on Count II, and that there are genuine issues of material fact as to the remaining counts. Therefore, defendants' motion is GRANTED, plaintiff's motion is DENIED, and Count II is dismissed with prejudice.

## BACKGROUND[1]

Defendant SELEX Systems Integration, Inc. is an Overland Park, Kansas-based company producing aviation navigation, landing, and surveillance systems. Defs.' Statement of Uncontroverted Facts ¶ 1 ("Defs.' SOF"); Pl.'s Statement of Undisputed Material Facts ("Pl.'s SOF") ¶ 1. Plaintiff Ronald Peck worked as an at-will employee in various positions for SELEX and its predecessor entities from April 1997 until September 2012. Defs.' SOF ¶¶ 2-3; Pl.'s SOF ¶ 2. Each of Peck's positions resulted from a change in his assigned role initiated by SELEX. Defs.' SOF ¶ 6. Peck held various positions in technical and/or quality roles at SELEX's offices in Kansas from April 1997 until 2008. Defs.' SOF ¶ 5; Pl.'s SOF ¶ 3. In March 2008 Peck accepted a position as Vice President of Business Development, responsible for marketing and sales in the U.S. market, also at SELEX's Kansas offices. Pl.'s SOF ¶ 4. By letter dated July 30, 2008, Peck was

---

[1] The following is factual background relevant to Count II of Plaintiff's Amended Complaint.

informed SELEX had established a Key Employee Deferred Compensation Plan ("the Plan") and that he was a participant therein. Pl.'s SOF ¶ 5. SELEX opened a D.C. office in early 2010. Pl.'s SOF ¶ 7. At some point between August 2010 and October 2011 Peck assumed the position of Vice President of Strategy and Product Planning, essentially a marketing role. Defs.' SOF ¶ 9; Pl.'s SOF ¶¶ 7, 10. For approximately one year before October 2011, Peck "commuted" from the Kansas City area to SELEX's Washington D.C. office on a weekly basis. Defs.' SOF ¶ 8; Pl.'s SOF ¶ 7. In October 2011 Peck his wife moved to the Washington D.C. area where Peck continued to work out of the D.C. office. Defs.' SOF ¶¶ 9-10; Pl.'s SOF ¶¶ 7, 10.

On August 23, 2012, SELEX Chief Executive Officer Mike Warner met with Peck and informed him that, based on Warner's assessment of Peck's performance, Peck would no longer have his position in D.C. but was being offered the position of Vice President of Quality Control and Business Improvement back in the Kansas office, based on his background in the quality area. Defs.' SOF ¶¶ 13, 15; Pl.'s SOF ¶¶ 17-18. In a letter dated August 29, 2012, CEO Warner explained that waiting for further development in Peck's marketing abilities would jeopardize SELEX's business initiatives and SELEX needed to enhance its quality and business practices to keep pace with the growth of its programs. Defs.' SOF ¶ 14; Pl.'s SOF ¶ 21.

Peck declined SELEX's offer for him to assume the position of Vice President of Quality Control and Business Improvement—initially by phone on August 29, 2012, and in a letter dated September 3, 2012—because he did not want to return to Kansas at that time and he did not believe it was the right step for him from a career standpoint. Defs.'

SOF ¶ 20; Pl.'s SOF ¶ 21. By letter dated September 14, 2012, SELEX informed Peck that although no "cause" was needed because he was an at-will employee, it regarded his refusal of the assignment to the position of Vice President of Quality Control and Business Improvement as cause for termination of employment, and allowed him two weeks to cure his refusal of the assignment. Defs.' SOF ¶ 22; Ex. I (Sept. 14, 2012 Letter from Warner to Peck); Pl.'s SOF ¶¶ 23, 25. Peck still did not accept the assignment. Defs.' SOF ¶ 23; Pl.'s SOF ¶ 21.

SELEX terminated Peck's at-will employment for cause, effective September 30, 2012, based on what it considered to be his "voluntary and deliberate or intentional refusal to perform [his] material duties and obligations of his employment with SELEX." Defs.' SOF ¶¶ 24-25; Ex. J (Oct. 1, 2012 Letter from Warner to Peck); Pl.'s SOF ¶¶ 22-23. In terminating Peck for "cause," SELEX relied on its definition therefore found in its Key Employee Deferred Compensation Plan ("Plan") at Section 1.2.6(i). Defs.' SOF ¶ 26; Ex. K (Plan).[2] By the Plan's terms, the Administrative Committee has "discretionary authority and responsibility to interpret and construe the Plan and to determine all factual and legal questions under this Plan, including but not limited to the

---

[2] The Plan provides: "[T]he Participant's habitual neglect of or deliberate or intentional refusal to perform any of his or her material duties and obligations of his or her employment (including compliance with the Company's Code of Conduct) with the Company other than due to an eligible employee's death or Disability, provided that, if the nature of the circumstance is such that it may be cured, then the circumstance will not constitute Cause unless the Company provides written notice of the circumstance and provides the Participant with an opportunity to cure the circumstance and the circumstance is not cured (if capable of being cured) two (2) weeks from receipt of the notice . . . ." Ex. K. at 1.

4

entitlement of Participants and Beneficiaries, and the amounts of their respective interests." Defs.' SOF ¶ 27; Ex. K.

On or about April 5, 2013, Peck submitted a claim for benefits under the Key Employee Deferred Compensation Plan. Defs.' SOF ¶ 30; Ex. L; Pl.'s SOF ¶ 33. On June 21, 2013, the Key Employee Deferred Compensation Plan's Administrative Committee (the CEO, CFO, and Human Resources Director) timely denied Peck's claim for benefits and informed Peck of his right to appeal that decision. Defs.' SOF ¶ 31; Pl.'s SOF ¶ 33. On July 11, 2013, Peck sent an appeal to the Key Employee Deferred Compensation Plan Administrative Committee. Defs.' SOF ¶ 32; Pl.'s SOF ¶ 33. On September 6, 2013, the Key Employee Deferred Compensation Plan Administrative Committee timely denied plaintiff's appeal. Defs.' SOF ¶ 33; Pl.'s SOF ¶ 33.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings and the record demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must "designate specific facts showing there is a genuine

5

issue for trial" to defeat summary judgment. *Id.* at 324 (quotation marks omitted). The nonmovant's opposition, however, may not rest upon the mere allegations or denials of the pleadings, but must be supported by affidavits or other competent evidence. *Id.* Thus, by pointing to the absence of evidence sufficient to establish the existence of an element essential to the nonmovant's case, a moving party may succeed on summary judgment. *Id.* at 325. The court "must view the evidence in the light most favorable to the nonmoving party and . . . draw all reasonable inferences in favor of the nonmoving party." *Grosdidier v. Broad. Bd. of Governors, Chairman*, 709 F.3d 19, 23-24 (D.C. Cir. 2013) (quotation marks omitted).

## ANALYSIS

Peck challenges defendants' denial of his accrued deferred compensation Plan benefit. He brings suit pursuant to 29 U.S.C. § 1132(a)(1)(B), which provides a cause of action for an ERISA plan participant like Peck "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

### A. Standard of Review.

Before reaching the merits, the parties dispute the applicable standard of review. Defendants argue that the Court's review is limited to determining, on the basis of the evidence available to the Administrative Committee, whether the Committee acted arbitrarily and capriciously in reaching its decision. Defs.' Mem. 4-5 (citing *Pettaway v. Teachers Ins. & Annuity Ass'n of Am.*, 644 F.3d 427, 433 (D.C. Cir. 2011)). In *Firestone Tire & Rubber Co. v. Bruch*, the Supreme Court held that a denial of benefits challenged

under ERISA § 1132(a)(1)(B) is to be reviewed under a *de novo* standard "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan" in which case the deferential arbitrary and capricious standard applies. 489 U.S. 101, 115 (1989). The *Firestone* standard is "one of reasonableness." *Pettaway*, 644 F.3d at 435 (quotation marks omitted). The "essential inquiry" is whether the Administrative Committee "reasonably construe[d] and appl[ied] the . . . Plan in [Peck's] case" rather than whether the decision was the correct one or what the Court might reach if reviewed *de novo*. *Block v. Pitney Bowes Inc.*, 952 F.2d 1450, 1454 (D.C. Cir. 1992).

Plaintiff contends that the deferential *Firestone* standard of review does not apply here where a "top hat" deferred compensation plan is at issue. Top hat plans are unfunded plans "maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees[,]" 29 U.S.C. § 1051(2), and "are wholly exempt from ERISA's fiduciary requirements." *In re ULLICO Inc. Litig.*, 605 F. Supp. 2d 210, 221 (D.D.C. 2009). Relying upon the approach taken by the Third and Eighth Circuits, plaintiff maintains that *de novo* review applies to top hat plans even where, as here, administrators are given interpretive discretion. *Goldstein v. Johnson & Johnson*, 251 F.3d 433, 443 (3d Cir. 2001); *see also Craig v. Pillsbury Non–Qualified Pension Plan*, 458 F.3d 748, 752 (8th Cir. 2006). Those courts have reasoned that top hat plans should be reviewed "in accordance with ordinary contract principles" and subject to *de novo* review because the policy considerations relied upon in *Firestone* to support a more deferential standard of

review—namely, analogizing ERISA fiduciaries with common-law trustees—are not present with top hat plans and their non-fiduciary administrators. *See Goldstein*, 251 F.3d at 443; *see also Craig*, 458 F.3d at 752. Other circuits have reached the opposite conclusion, however, finding *de novo* review applies with even greater force to a top hat plan. *See, e.g., Comrie v. IPSCO, Inc.*, 636 F.3d 839, 842 (7th Cir. 2011) (rejecting *Goldstein*'s analysis and applying deferential review, noting it should be "easier, not harder . . . to honor discretion-conferring clauses in contracts that govern the actions of non-fiduciaries"). Our Circuit, however, has not yet opined on this particular issue.

Given our Circuit's directive to review ERISA plan benefit determinations under an arbitrary-and-capricious standard when interpretive discretion is given to a plan administrator, *see Pettaway*, 644 F.3d at 433, I will apply that standard here.[3] Accordingly, I must determine whether the Plan's decisions were reasonable. I conclude they were.

### B. The Denial of Peck's Claim for Benefits Was Reasonable.

Peck contends he was terminated without cause and therefore wrongfully denied benefits. On or about April 5, 2013 Peck sent his initial claim for benefits under the Key Employee Deferred Compensation Plan, stating in relevant part:

> I am qualified to receive this vested accrued benefit under 4.1(a) of the Plan in that I was terminated by SELEX without cause as defined

---

[3] I note, however, that the apparent difference between the two standards is ultimately a distinction without a difference. It is undisputed that the Plan grants its administrator discretion to interpret its terms. Plaintiff concedes that, even under *de novo* review, "[o]rdinary contract principles require that, where one party is granted discretion under the terms of the contract, that discretion must be exercised in good faith—a requirement that includes the duty to exercise the discretion reasonably." Pl.'s Opp'n (quoting *Goldstein v. Johnson & Johnson*, 251 F.3d 433, 443 (3d Cir. 2001) (citations omitted)). Likewise, the applicable deferential standard is one of reasonableness. *Pettaway*, 644 F.3d at 435.

8

> under Section 1.2.6 of the Plan. At no time prior to the date of my termination from the position of Vice-President of Strategy and Product Planning was I informed by any Company representative that I engaged in habitual neglect of or deliberate or intentional refusal to perform any of my material duties and obligations of my employment. Further, at no time was I given a notice of circumstances constituting such action and given an opportunity to cure those circumstances. I remained ready, willing and able to perform my duties in that position and it was SELEX which terminated me from that position as established in Treas. Reg. §1.409A-l(n)(l).

Ex. L (Apr. 5, 2013 Letter from Peck to the Administrative Committee). It is undisputed, however, that after Peck initially declined the position of Vice President of Quality Control and Business Improvement, SELEX informed him on September 14, 2012 that it regarded his refusal of the assignment to that position as "voluntary and deliberate refusal to perform [his] material duties and obligations of [his] employment with SELEX, and as such, would constitute cause," "urge[d] [him] to reconsider," and allowed him two weeks from his receipt of the letter to cure his refusal of the assignment. Defs.' SOF ¶ 22; Ex. G; Pl.'s SOF ¶¶ 23, 25. Peck in turn argues that his declination of the new position "cannot logically or legally be an 'intentional refusal to perform any of his . . . material duties and obligations his . . . employment' because he was never employed in that position." Pl.'s Mot. for Summ. J. 23.

The ultimate question before the Court is whether the Administrative Committee reasonably construed and applied the Plan in terminating Peck for cause. That is, was it reasonable to find Peck's declination of the assignment to be Vice President of Quality and Business Improvement constituted "deliberate or intentional refusal to perform *any* of his . . . material duties and obligations of his . . . employment . . . with the Company

. . . ." Ex. K at 1 (emphasis added). I find it was reasonable. A reasonable decision is one that "is the result of a deliberate, principled reasoning process and . . . supported by substantial evidence[,]" that is, "more than a scintilla" of evidence. *Buford v. UNUM Life Ins. Co. of Am.*, 290 F. Supp. 2d 92, 100 (D.D.C. 2003) (internal quotation marks omitted). Peck's argument—that his refusal to accept an offer for a new position cannot constitute refusal to perform his material duties and obligations of his then-position—is one possible reasonable interpretation of the Plan. It is equally if not more reasonable, however, for SELEX to construe Peck's refusal to accept a new assignment—offered based on its assessment of Peck's performance—as refusal to perform his "material duties and obligations of his . . . employment . . . with the Company[,]" which is grounds to be terminated for cause. Ex. K at 1. And the plain language of the Plan prevents an employee terminated for cause from receiving Plan benefits. *Id.* The "Court must not overturn a decision found to be reasonable, even if an alternative decision also could have been considered reasonable." *Block*, 952 F.2d at 1452 (internal quotation marks omitted).

I am not persuaded by Peck's argument that the reasonableness of the Administrative Committee's decision is undermined by CEO Warner's dual role in notifying Peck that his refusal would constitute cause and later finding that to be the case. Peck points out Warner was the sole voting member of the Administrative Committee that "reviewed [Warner's] initial determination" that Peck's termination was for cause, and argues that a "party acting in good faith and reasonably would have disqualified Warner from reviewing his own decision." Pl.'s Mot. for Summ. J. 23. The relevant question is not if an alternative decision would have been reasonable, but rather the

10

reasonableness of the challenged decision. *See Block*, 952 F.2d at 1452. It is undisputed that Warner initially provided Peck notice of SELEX's determination that Peck's refusal to accept the new position would constitute "cause" under the Plan, Peck was given two weeks to cure his refusal, Peck continued to decline the position, and SELEX then terminated him for cause. The fact that Warner was the voting member of the Administrative Committee that made the for-cause determination does not alter my conclusion that it was a reasonable one.

I also find that the Administrative Committee's denial of plaintiff's appeal was reasonable. Peck's appeal failed to identify any new evidence or basis for his entitlement to benefits.[4] Defs.' SOF 32; Ex. N (July 11, 2013 Letter from Peck to the Administrative Committee). In the appeal Peck continued to argue his conduct did not amount to an intentional refusal to perform any materials duties, and that SELEX failed to provide him notice of circumstances constituting such cause. *Id.* As explained above, however, as well as in the denial of plaintiff's appeal, *see* Ex. O (Sept. 6, 2013 Letter from Warner to Peck), it is undisputed SELEX notified him by letter dated September 24, 2012 that his refusal to accept the new position would constitute intentional refusal to perform his material duties, gave him two weeks to accept, and—after the two weeks had elapsed without his acceptance of the position—terminated him for that reason. Absent any material change in circumstances, I find the denial of Peck's appeal to be reasonable.

---

[4] The only potentially new material fact—that SELEX terminated him without cause August 27, 2012 "when it terminated [his] position as Vice-President of Strategy and Product Planning," Defs.' SOF 32— is no longer asserted by Peck, who concedes he was terminated September 30, 2012 and was paid through that date. Pl.'s SOF ¶¶ 22-23.

## CONCLUSION

Thus, for all of the foregoing reasons, Defendants' Motion for Summary Judgment on Count II of Plaintiff's Amended Complaint is GRANTED, Plaintiff's Motion for Summary Judgment is DENIED, and Count II is DISMISSED with prejudice. A separate Order consistent with this decision accompanies this Memorandum Opinion.

*[signature]*
RICHARD J. LEON
United States District Judge