**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| *Ronald E. Peck*, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) Civil Action No. 13-00073 (RJL/RMM) |
|  | ) |
| *SELEX Systems Integration, Inc.* and | ) |
| *SELEX Sistemi Integrati, Inc.* | ) |
| *Key Employee Deferred* | ) |
| *Compensation Plan*, | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

## REPORT AND RECOMMENDATION

Plaintiff Ronald E. Peck ("Mr. Peck") has sued Defendants, Mr. Peck's former employer SELEX Systems Integration, Inc ("SELEX") and SELEX Sistemi Integrati, Inc. Key Employee Deferred Compensation Plain (the "Plan"), for payment of employee benefits and compensation under state law and the Employee Retirement Income Security Act ("ERISA"). *See* ECF No. 33 (First Amended Complaint) ("Amend. Compl.") ¶¶ 1, 27–54; 29 U.S.C. § 1001 *et seq*. After prevailing on his ERISA claim, Mr. Peck filed the pending Motion for Attorneys' Fees ("Fee Petition"), in which he seeks to recover $430,630.69 in attorneys' fees related to his ERISA claim under Count II of his complaint. *See* ECF No. 83 (plaintiff's motion for attorneys' fees) ("Pl.'s Mot."). On August 27, 2020, Mr. Peck filed a supplemental request for an additional $42,362.25 in attorneys' fees related to the pending Fee Petition ("Supplemental Request"). *See* ECF No. 90 (plaintiff's supplemental motion for attorneys' fees) ("Pl.'s Suppl. Mot."). SELEX

opposes both requests.[1]  *See* ECF No. 87; ECF No. 91.  Upon referral from United States District

Judge Richard J. Leon, the undersigned now makes this report and for the reasons set forth

below, recommends that the Court GRANT Plaintiff's Motion for Attorneys' Fees and Plaintiff's

Supplemental Motion for Attorneys' Fees and award Plaintiff $383,778.80 in attorneys' fees

related to his ERISA claim and $38,126.03 in attorneys' fees related to this fee petition, for a

total award of $421,904.83.

## BACKGROUND

### I.  Factual Background

In April 1997, SELEX hired Mr. Peck to work in its U.S. headquarters in Overland Park,

Kansas.  *See* Amend. Compl. ¶¶ 3, 7–10; ECF No. 62 (June 2, 2017 Trial Transcript) ("06/02/17

Tr.") at 44:18–20.  In March 2008, Mr. Peck became Vice President of Business Development,

and was responsible for expanding SELEX's market in the United States.  *See* Amend. Compl. ¶

8; ECF No. 61 (June 1, 2017 Trial Transcript) ("06/01/17 Tr.") at 66:15–67:3.  To support these

efforts, SELEX opened a Washington, DC office in 2010 and Mr. Peck started traveling

frequently between Kansas and Washington, D.C.  *See* Amend. Compl. ¶ 10; 06/01/17 Tr. at

67:4–22.  In October 2011, Mr. Peck and his wife permanently relocated to Washington, D.C. for

his new position.  *See* Amend. Compl. ¶¶ 12–13.

In August 2012, SELEX's Chief Executive Officer Mike Warner ("Mr. Warner") notified

Mr. Peck that SELEX would terminate him from his position in Washington D.C., but that

SELEX could offer Mr. Peck a new position with different duties and responsibilities in its

---

[1] SELEX's brief opposing Mr. Peck's Fee Petition was filed jointly by both Defendants but signed only by SELEX.  *See* ECF 87.  SELEX's memorandum in opposition to Mr. Peck's Supplemental Request was filed and signed only by SELEX.  *See* ECF 91.  Even if Defendants join in opposing Mr. Peck's Fee Petition and Supplemental Request, the undersigned will refer solely to SELEX as the opposing party to these pending requests.

Kansas office, where Mr. Peck would have to relocate. *See id.* ¶¶ 19–22. Mr. Peck declined this new position, and in September 2012, Mr. Warner terminated Mr. Peck's employment with SELEX for cause. *See id.* ¶¶ 23–24. Although Mr. Peck was an at-will employee, termination for cause meant that Mr. Peck might not be eligible for certain employee benefits, including severance pay and deferred compensation under the Plan. *See id.* ¶¶ 40–41. In April 2013, Mr. Peck submitted a claim for benefits to the Plan's administrator, and in June 2013, the Plan's Administrative Committee denied Mr. Peck's claim for benefits after finding that Mr. Peck's termination of employment was for cause. *See id.* ¶¶ 42, 44. Mr. Peck appealed, but the Administrative Committee again denied his claim for benefits. *See id.* ¶ 45; *see also* ECF No. 44-16 (September 6, 2013 letter from Mr. Warner to Mr. Peck). Mr. Peck maintains that his involuntary termination from employment with SELEX was without cause. *See* Amend. Compl. ¶ 26.

## II. Procedural Background

Mr. Peck filed his initial complaint in the Superior Court for the District of Columbia, in which he raised three breach of contract claims arising from his termination from SELEX, including Count I, failure to provide severance pay, Count II, failure to pay deferred compensation benefits, and Count III, failure to pay relocation expenses.[2] *See* Compl. ¶¶ 25–47. On January 17, 2013, SELEX, then the only named defendant, removed the case to this Court contending that Mr. Peck's breach of contract claim under Count II for failure to pay deferred compensation benefits was preempted by ERISA. *See* ECF No. 1 (Notice of Removal).

---

[2] In his initial complaint, Mr. Peck also alleged a fourth breach of contract claim for failing to pay accrued vacation time, which he subsequently withdrew. *See* ECF No. 1-1 (Complaint) ("Compl.") ¶¶ 48–53; ECF No. 18 (Plaintiff's first motion to amend) ("Pl.'s Mot. to Amend") at 1; *see generally* Amend. Compl.

Concurring with SELEX's position, on February 19, 2013, Mr. Peck filed a stipulation agreeing to dismiss Count II's breach of contract claim with prejudice. *See* ECF No. 11 ("Stipulation").

Thereafter, on July 30, 2013, Mr. Peck moved to amend his complaint to replead Count II as an ERISA claim and to add the Plan as a defendant. *See* ECF 18. SELEX opposed this motion to amend and on October 25, 2013, moved to dismiss Mr. Peck's remaining contract claims under Counts I and III. *See* ECF No. 21 (memorandum opposing Plaintiff's motion to amend); ECF No. 26 (SELEX's motion for summary judgment). As to Count I specifically, SELEX argued that Mr. Peck was not entitled to severance payment because no contract existed and in the alternative because Mr. Peck's termination was for reasons constituting cause. *See* ECF No. 26-1 (memorandum supporting SELEX's motion for summary judgment) ("SELEX Summary Judgment Memo.") at 20–21. On January 28, 2014, Judge Leon denied SELEX's motion for summary judgment on Counts I and III and granted Mr. Peck's motion to amend his complaint to replead Count II as an ERISA claim and to add the Plan as a defendant. *See* Minute Order dated January 28, 2014 (granting motion to amend complaint); Minute Order dated January 28, 2014 (denying motion for summary judgment). On that same day, Mr. Peck filed his amended complaint. *See* Amend. Compl.

On August 14, 2015, Defendants moved for partial summary judgment on Mr. Peck's ERISA claim. *See* ECF No. 44. On the same day, Mr. Peck moved for summary judgment on all counts. *See* ECF 45. On March 24, 2016, Judge Leon granted Defendants' motion for partial summary judgment, denied Mr. Peck's motion for summary judgment, and dismissed Mr. Peck's ERISA claim. *See* ECF No. 52 (Memorandum Opinion); ECF 53 (Order). Judge Leon then conducted a three-day bench trial on Mr. Peck's two remaining state law claims under Counts I and III regarding severance payment and relocation expenses, respectively. *See* Minute Entry

dated June 1, 2017; Minute Entry dated June 2, 2017; Minute Entry dated June 5, 2017. Following this bench trial, Judge Leon found in favor of SELEX on Count I and in favor of Mr. Peck on Count III.  *See* ECF No. 70 (Memorandum Opinion).

On September 27, 2017, Mr. Peck appealed Judge Leon's rulings on Counts I and II for severance pay and denial of deferred compensation benefits under Mr. Peck's ERISA claim.  *See* ECF No. 74 ("Notice of Appeal").  The D.C. Circuit affirmed judgment in favor of SELEX on Count I and directed entry of judgment in favor of Mr. Peck for his ERISA claim under Count II. *Peck v. SELEX Sys. Integration, Inc.*, 895 F.3d 813, 820–22 (D.C. Cir. 2018).  The Circuit Court held in pertinent part that Mr. Peck's refusal to accept a transfer to a new position in a different geographic area "could not have reasonably qualified as a termination for cause within the meaning of the Plan."  *See id.* at 821.

Pursuant to the D.C. Circuit's mandate, Judge Leon entered judgment in favor of Mr. Peck on his ERISA claim in the amount of $57,020.38, plus prejudgment interest in the amount of $11,930.14 for a total judgment of $68,950.52, plus post-judgment interest on $11,930.14 at the rate detailed in 28 U.S.C. § 1961.  *See* ECF No. 82 (Order).  Judge Leon reaffirmed judgment in favor of SELEX on Count I and in favor of Mr. Peck on Count III for a total judgment amount of $32,533.99, plus post-judgment interest on Count III.  *Id.*

On October 28, 2019, Mr. Peck filed his pending Fee Petition.  *See* Pl.'s Mot.  On the same date, Mr. Peck filed a memorandum in support of his Fee Petition with accompanying exhibits, and on November 5, 2019, Mr. Peck submitted corrected billing records.  *See* ECF No. 83-1 (memorandum) ("Pl.'s Mem."); ECF No. 83, Attachments 2–19 (Pl.'s Exs. 1–18); ECF No. 84 (Errata Pl.'s Ex. 18).  SELEX filed its memorandum in opposition to Mr. Peck's Fee Petition on November 22, 2019, and Mr. Peck filed a reply in support of his Fee Petition on December 2,

2019.  *See* ECF No. 87 (memorandum in opposition) ("SELEX Opp."); ECF No. 89 (reply to

opposition) ("Pl.'s Reply").  On August 27, 2020, Mr. Peck filed his supplemental request for

additional attorneys' fees related to the pending Fee Petition.  *See* Pl.'s Suppl. Mot.  SELEX filed

its memorandum opposing this Supplemental Request on September 10, 2020, and Mr. Peck

replied in support of his Supplemental Request on September 17, 2020.  ECF No. 91

(memorandum in opposition) ("SELEX Opp. 2"); ECF No. 92, (reply to opposition) ("Pl.'s

Reply 2").

## LEGAL STANDARD

### I.  Fee-Shifting in ERISA Cases

Pursuant to 29 U.S.C. § 1132(g)(1), at its discretion, a court "may allow a reasonable

attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1); *see also* Fed. R. Civ.

P. 54(d)(2); Loc. Civ. R. 54.2.  A party must "achieve[] 'some degree of success on the merits,'"

but need not be the prevailing party.  *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242,

244–45 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)).

The D.C. Circuit has outlined five factors, the "*Hummell* factors," to assist judges in

determining whether to award attorneys' fees in ERISA suits.[3]  *Eddy*, 59 F.3d at 206; *see also*

*Clark v. Feder, Semo & Bard*, *P.C.*, 59 F. Supp. 3d 114 (D.D.C. 2014).  These factors include:

"'(1) the losing party's culpability or bad faith; (2) the losing party's ability to satisfy a fee

award; (3) the deterrent effect of such an award; (4) the value of the victory to plan participants

---

[3] The Ninth Circuit developed these five factors in *Hummell v. S.E. Rykoff & Co.*, 634
F.2d 446, 453 (9th Cir. 1980).  The factors are based on decisions from the Fifth and Tenth
Circuits.  *See Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255 (5th Cir. 1980); *Eaves v.
Penn*, 587 F.2d 453, 465 (10th Cir. 1978).  The D.C. Circuit has recognized that the First,
Second, Third, Fourth, and Eleventh Circuits also have adopted these factors.  *See Eddy v.
Colonial Life Ins. Co. of Am.*, 59 F.3d 201, 206 n.10 (D.C. Cir. 1995).

and beneficiaries, and the significance of the legal issue involved; and (5) the relative merits of the parties' positions.'" *Eddy*, 59 F.3d at 206 (quoting *Grand Union Co. v. Food Employers Lab. Rels. Ass'n*, 808 F.2d 66, 72 (D.C. Cir. 1987)).  The *Hummell* factors provide a flexible framework in which the court can evaluate a motion for attorneys' fees on a case-by-case basis. *See id.* at 206 ("The factors are neither exclusive nor quantitative, thereby affording leeway to the district courts to evaluate and augment them on a case-by-case basis.").  They are crafted to "confront the 'nuclei of concerns' relevant to ERISA lawsuits ... and implement the statute's underlying purposes." *Id.* (citing *Iron Workers*, 624 F.2d at 1266).

More recently, the Supreme Court has held that these factors "are not required for channeling a court's discretion when awarding fees under this section." *Hardt*, 560 U.S. at 255. If some success on the merits has been established, then it is at the court's discretion to determine whether awarding attorneys' fees is appropriate. *Id.* at 254–55.  However, "[i]f a district court decides to consider some of these factors rather than simply granting attorney's fees, it 'cannot selectively consider some factors while ignoring others.'" *Tedesco v. I.B.E.W. Local 1249 Ins. Fund*, 729 F. Appx 136, 139 (2d Cir. 2018) (quoting *Donachie v. Liberty Life Assurance Co. of Boston*, 745 F.3d 41, 47 (2d Cir. 2014)).

## II. Calculating Fees

If a court determines that a party "is entitled to an award of fees, [it] must, in an exercise of its 'traditional equitable discretion,' determine the appropriate amount." *Am. Oversight v. U.S. Dep't of Justice*, 375 F. Supp. 3d 50, 69 (D.D.C. 2019) (quoting *Fenster v. Brown*, 617 F.2d 740, 742 (D.C. Cir. 1979)); *Combs v. Coal & Mineral Mgmt. Servs.*, Inc., 105 F.R.D. 472, 475 (D.D.C. 1984) ("The reasonableness of the fees requested by the [plaintiff] is a 'judgment call' which only the [c]ourt can make."); *Dorsey v. Jacobson Holman, PLLC*, 851 F. Supp. 2d 13, 16

(D.D.C. 2012), *aff'd*, No. 12-7031, 2012 WL 3244092 (D.C. Cir. Aug. 7, 2012) ("ERISA provides that the court may, in its discretion, allow reasonable fees and costs to either party"); *see also* 29 U.S.C. § 1132(g)(1).  "The usual method of calculating reasonable attorney's fees is to multiply the hours reasonably expended in the litigation by a reasonable hourly fee, producing the 'lodestar' amount." *Flynn v. Dick Corp.*, 624 F. Supp. 2d 125, 130 (D.D.C. 2009) (quoting *Bd. Of Trs. of Hotel and Rest. Employees Loc. 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998)).

"The fee applicant bears the burden of demonstrating that the claimed rate and number of hours are reasonable." *Dorsey*, 851 F. Supp. 2d at 18 (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Covington v. Dist. of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir.1995)).  To satisfy this burden, the fee applicant should provide supporting documents, "includ[ing] contemporaneous time records of hours worked and rates claimed, plus a detailed description of the subject matter of the work." *See id.* (quoting *In re Donovan*, 877 F.2d 982, 994 (D.C. Cir. 1989)).  These records must afford enough detail "that permits the district court to make an independent determination whether or not the hours claimed are justified." *See id.* (citing *Cobell v. Norton*, 231 F. Supp. 2d 295, 306 (D.D.C. 2002) (internal quotations omitted)); *see also Am. Oversight*, 375 F. Supp. 3d at 69 ("Any supporting documentation must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended, typically in the form of contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney.") (citations omitted).  "Once the plaintiff has met this burden, the burden shifts to the defendant to rebut the presumption of reasonableness with 'equally specific countervailing evidence.'" *12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*, No. 17-cv-02000 (APM), 2020 WL

1429904, at *6 (D.D.C. Mar. 23, 2020) (quoting *Covington*, 57 F.3d at 1107–08 (internal

quotations omitted)).

Although courts regard the lodestar as the presumptively reasonable fee amount, a court

may adjust the lodestar further, up or down, in certain rare and exceptional cases. *See Flynn*, 624

F. Supp. 2d at 130 (citing *Bd. Of Trs. of Hotel and Rest. Employees Loc.*, 136 F. 3d at 801). In

such cases, "[t]he burden of such an adjustment, however, rests on the party proposing the

deviation." *Jones v. Local 4B, Graphic Arts Int'l Union, AFL-CIO*, 595 F. Supp. 792, 794

(D.D.C. 1984).

## DISCUSSION

### I.  Awarding Attorneys' Fees

The history of this case clearly demonstrates that Mr. Peck has achieved far more than

"trivial success on the merits" or a "purely procedural victory," and has achieved the requisite

"success on the merits" of his ERISA claim to render him eligible for attorneys' fees under 29

U.S.C. § 1132(g)(1). *See Hardt*, 560 U.S. 242, at 255–56. However, because the D.C. Circuit

has not revisited its holding in *Eddy* in light of the Supreme Court's decision in *Hardt*, the

undersigned has reviewed the five *Hummell* factors and concludes that those factors also

demonstrate that Mr. Peck is entitled to reasonable attorneys' fees.

### A.  *Culpability or Bad Faith*

Mr. Peck argues that SELEX acted in bad faith, or alternatively acted with culpability, by

using the threat of terminating him for cause to pressure him to accept a position that would

require him to return to the Kansas office. *See* Pl.'s Mem. at 11–12. Specifically, Mr. Peck

claims that when SELEX first presented Mr. Peck with removal from the Washington D.C.

office, he understood that SELEX was not seeking to terminate him but was giving him an

option to take a new position in Kansas. *Id*. Only after he declined this offer to transfer did SELEX change what had been an "option" to transfer into an "assignment" to transfer, so as to construe Mr. Peck's refusal as a basis for termination "for cause." *Id*. Mr. Peck concludes that such unreasonable interpretation of "for cause" to pressure Mr. Peck to take the Kansas position or risk losing his employment benefits was irreconcilable with ERISA's purpose. *Id*. In response, SELEX contends that "it seems inarguable" that SELEX's interpretation was founded in reasonable legal argument and that bad faith does not exist simply where a higher court disagrees with such argument. *See* SELEX Opp. at 8–9. Likewise, SELEX argues that to rule a party's conduct was both blamable and wrong simply because that party lost, would render the *Hummell* factors superfluous. *See id.*

The undersigned finds that SELEX did not act in bad faith or with culpability and therefore, the first *Hummell* factor does not weigh in favor of awarding attorney's fees.

### 1. Bad Faith

A party demonstrates culpability or bad faith through "evidence of intentional or reckless conduct." *Clark*, 59 F. Supp. 3d at 117 (quoting *Boland v. Thermal Specialties, Inc.*, 966 F. Supp. 2d 8, 12 (D.D.C. 2013) (quoting *Eddy*, 59 F.3d at 210)). "Actions that courts consider to be taken in bad faith typically reflect a party's intent to confuse or mislead the court." *Id*.; *see Finks v. Life Ins. Co. of N. Am.*, No. 08-1272 (ESH) (AK), 2009 WL 2230899, at *4 (D.D.C. July 24, 2009) (finding bad faith when a defendant demonstrated that it did "not find it necessary to comply with ERISA deadlines," including a potential issue with backdating a letter); *Becker v. The Weinberg Group, Inc.*, 554 F. Supp. 2d 9, 17 (D.D.C. 2008) (finding that if bad faith must be assigned, it should be assigned to defendants who were disingenuous in their filings and who developed numerous unprecedented conditions which plaintiff had to fulfill in order to receive

10

her benefits).  Bad faith is distinct from the fifth factor, legal merits, in that it does not focus on "the relative merits of the parties' legal arguments and factual contentions, but on the nature of the offending party's conduct."  *Eddy*, 59 F.3d at 209.  However, "arguments may be 'so devoid of merit as to rise to the level of bad faith.'"  *Clark*, 59 F. Supp. 3d at 117 (citing *Holland v. Williams Mountain Coal Co.*, 496 F.3d 670, 673 (D.C. Cir. 2007)).

 The record does not indicate that SELEX acted with bad faith when Mr. Warner characterized Mr. Peck's job offer as an assignment as opposed to an offer.  *See* ECF No. 44-7 (August 29, 2012 letter from Mr. Warner to Mr. Peck) (stating that "SELEX can no longer support your continuation in Washington, DC" and that "we need you to transfer immediately back to Overland Park" under this new full-time "assignment").  Mr. Peck characterizes SELEX's conduct as an attempt to use the ERISA benefits as leverage to force him to accept a transfer.  However, SELEX posits that the transfer was a necessary reassignment based on Mr. Peck's poor performance in his Washington, DC position.  Although the D.C. Circuit ultimately found SELEX's interpretation of "for cause" to be an "unnatural reading" of the Plan, SELEX's position is not so frivolous or so devoid of merit to rise to the level of bad faith.  *See Peck*, 895 F.3d at 820; *see also Holland*, 496 F.3d at 674 (finding the plaintiff did not act in bad faith when it relied on a legal theory that another jurisdiction had rejected because that other jurisdiction was non-binding); *Boland*, 966 F. Supp. 2d at 12 (finding no evidence that the non-moving parties lacked "at least an objectively reasonable belief that they might prevail, or that their motivation for filing suit was 'questionable.'").  "A losing case is not bad faith."  *Boland*, 966 F. Supp. 2d at 13.  Further, there is no evidence that SELEX acted in bad faith in defending its positions in this litigation.

2.  Culpability

The D.C. Circuit has not clarified whether the terms "bad faith" and "culpability" should be considered separately.[4]  *Eddy*, 59 F.3d at 209–10.  Most cases in this Circuit do not distinguish the terms or define them differently.  *See, e.g.*, *Eddy*, 59 F.3d at 210; *Clark*, 59 F. Supp. 3d at 117–18; *T.I.M.E.-D C, Inc. v. I.A.M. Nat. Pension Fund*, 616 F. Supp. 400, 404 (D.D.C. 1985).  Two cases, however, have differentiated "bad faith" and "culpability."  In *Afram v. UFCW Unions & Participating Employers Health & Welfare Fund*, the court defined culpability as "conduct that is blameable, censurable or at fault" and bad faith as "intentional or reckless conduct."  No. 12-1389 (RWR/AK), 2014 WL 12889590, at *3 (D.D.C. Jan. 15, 2014), *report and recommendation adopted*, No. 12-1389 (RWR), 2014 WL 595507 (D.D.C. Feb. 18, 2014).  In *Risteen v. Youth for Understanding, Inc.*, the court defined culpability separately from bad faith as conduct that is "reprehensible or wrong," but did not require that it

---

[4] Several circuits, on the other hand, have drawn a distinction between "bad faith" and culpability."  *See Tedesco*, 729 F. Appx at 139 ("The concepts of bad faith and culpability are distinct ....") (internal quotations omitted) (citing Second Circuit decision, *Donachie*, 745 F.3d at 47); *Tedford v. Benchmark Ins. Co.*, 45 Fed. Appx. 318, *3 (5th Cir. 2002) (noting that the first factor is phrased disjunctively); *McPherson v. Employees' Pension. Plan of Am. Re-Ins. Co.*, 33 F.3d 253, 257 (3d Cir. 1994) (suggesting that while a party's testimony may not reflect "bad faith" it did reflect a breach of fiduciary duty, that might be enough to render the party culpable).  When considered separately, these courts have typically defined culpable conduct as "blameable; censurable; ... at fault; involving the breach of a legal duty or the commission of a fault...." *Slupinski v. First Unum Life Ins. Co.*, 554 F.3d 38, 48 (2d Cir. 2009)) (citations omitted); *Locher v. Unum Life Ins. Co. of Am.*, 389 F.3d 288, 299 (2d Cir. 2004) (finding that when a doctor based his findings regarding a disability on "assumptions as to human behavior, rather than scientific analysis of medical evidence," his actions were culpable); *Salovaara v. Eckert*, 222 F.3d 19, 28 (2d Cir. 2000) (A defendant is culpable if he "violated ERISA, thereby depriving plaintiffs of rights under a pension plan and violating a Congressional mandate."); *Paese v. Hartford Life & Acc. Ins. Co.*, 449 F.3d 435, 450 (2d Cir. 2006) (noting it was "appropriate for the district court to consider the degree to which [the defendant] failed to engage in a fair and open-minded consideration of [the plaintiff's] claim" when determining culpability).

"involve[] malice or a guilty purpose."  No. 02-0709 (JDB), 2003 WL 22011766, at *2 (D.D.C. Aug. 19, 2003) (citations omitted).

Even if the undersigned defines culpability separately from bad faith, Mr. Peck has not demonstrated that SELEX acted culpably.  The record does not suggest that SELEX engaged in reprehensible conduct or a wrong, such as a breach of a legal duty, when it misconstrued Mr. Peck's termination as one for cause.  The fact that SELEX did not prevail in its defense is not grounds for finding culpability.  *McPherson*, 33 F.3d at 257 ("A party is not culpable merely because it has taken a position that did not prevail in litigation.").

### B.    Ability to Satisfy an Award

Mr. Peck argues that SELEX's revenue is in the billions of dollars and SELEX neither disputes this, nor addresses its ability to pay an award of attorneys' fees.  *See* Pl.'s Mem. at 13; *see generally* SELEX's Opp.  Therefore, this second *Hummell* factor weighs in favor of awarding attorneys' fees.  *See Afram*, 2014 WL 12889590, at *4 (finding that factor two favored an award of fees despite the there being no evidence to support the claim that the non-moving party had the means of paying an award of fees, but noting that the non-moving party did not dispute his ability to pay otherwise); *see also Grand Union Co. v. Food Employers Lab. Rels. Ass'n*, No. 85-1551, 1985 WL 6072, at *6 (D.D.C. Oct. 25, 1985), *aff'd*, 808 F.2d 66 (D.C. Cir. 1987) ("as an on-going corporation, plaintiff is clearly able to satisfy a fee award.").

### C.    Deterrence

Mr. Peck argues that an award directing SELEX to pay attorneys' fees would deter future misconduct especially because the actual sum at issue is relatively small.  *See* Pl.'s Mem. at 13– 14 (noting that few beneficiaries have the personal funds to file a lawsuit over unlawfully withheld compensation benefits, particularly for a small sum, such as the $57,020.00 at issue in

this case). SELEX disagrees that a case like this has any deterrent effect because its facts are *sui generis*, and thus "would require the creation of a similar fact pattern" which SELEX claims is unlikely to happen. *See* SELEX Opp. at 9–10 (combining both the third factor, deterrence, with the fourth factor, value to others, in one section). SELEX further claims that while a "modest" award of attorneys' fees would theoretically create a deterrent effect, the amount Mr. Peck seeks in this case would only serve as a windfall. *See id.*

Awarding attorneys' fees in this case would act as a deterrent regardless of the specific similarities between this and other ERISA cases because, at a minimum, the D.C. Circuit's ruling reminds plan administrators that decisions that are plainly unreasonable will not be afforded deference. *See generally Peck*, 895 F.3d 813; *see also Carpenters S. California Admin. Corp. v. Russell*, 726 F.2d 1410, 1416 (9th Cir. 1984) ("If defendant employers face the prospect of paying attorneys' fees for successful plaintiffs, they will have added incentive to comply with ERISA."). Moreover, a case's deterrent effect extends beyond future ERISA violations, but also affects the "delayed or otherwise inadequate detection and resolution of such violations." *Eddy*, 59 F.3d at 207. Thus, by awarding attorneys' fees, a court "make[s] both delay and litigation less likely, thereby encouraging earlier resolution of claims and the information-gathering to facilitate their resolution." *Id.*; *see also Risteen*, 2003 WL 22011766, at *4 ("Awarding attorney's fees ... encourage[s] employers to resolve such disputes sooner rather than later, before attorney's fees mount."). Finally, awarding attorneys' fees is especially important in cases, like this, where only one party is challenging the actions of a plan. Few beneficiaries have the resources to challenge administrators' decisions, especially where the prevailing award is relatively modest. Thus, when "plans underst[and] that clearly erroneous actions taken by them ... would be subject to attorneys' fees, th[is] might well deter them from engaging in such

conduct." *Becker*, 554 F. Supp. 2d at 18. As for SELEX's windfall argument, the disparity

between the fees sought and the monetary value of Mr. Peck's claim is irrelevant for purposes of

weighing deterrence, which speaks to whether attorneys' fees should be awarded, not to the

reasonableness of such award. Therefore, this factor weighs in favor of awarding attorneys' fees.

### D.    *Value to Plan Participants and Beneficiaries*

Mr. Peck argues that the outcome of this case provides a value to others that warrants an

award of attorneys' fees. *See* Pl.'s Mem. at 14. Specifically, he claims that "SELEX executives

[can] now enjoy the right to decline an 'assignment' to a different position having different

duties and responsibilities by its CEO without [fear of] being terminated for cause." *Id.* SELEX

suggests that this limited value to a small group of SELEX executives, at best, does not warrant

an award of attorneys' fees. *See* SELEX Opp. at 9–10.

The "relevant inquiry" for the fourth *Hummell* factor is whether the plaintiff's "victory

'conferred a common benefit' on future plaintiffs who may seek ERISA claims." *Clark*, 59 F.

Supp. 3d at 120 (quoting *Eddy*, 59 F.3d at 209). "Common benefits include 'providing a clear

statement of the law,' even if plan participants do not directly benefit from the case." *Id.* "A

clear statement of the law is one that addresses a generally applicable legal question, rather than

a narrow factual issue." *Id.*; *see also Risteen*, 2003 WL 22011766, at *4 (finding that the

plaintiff's claim "did not turn on some prosaic question or factual dispute," but provided

guidance of a previously unaddressed topic, therefore conferring benefit on future claimants).

Whether the outcome of a case serves as a benefit to others "is an objective factor, and the

subjective intent of the plaintiff in filing suit is irrelevant." *Eddy*, 59 F.3d at 209 (citations

omitted).

Mr. Peck's case has some value to others who remain part of the same Plan at issue in this case because it clarifies what conduct may not be deemed grounds for termination "for cause" under terms of the Plan, and clarifies that an employee's "material duties and obligations ... [n]aturally refers to the set of responsibilities assigned to an employee ... [which] are necessarily tied to an employee's position within the company." *Peck*, 895 F.3d at 820. Those clarifications benefit other employees who may wish to decline transfers to new positions or other changes in responsibilities. Thus, this factor favors awarding attorneys' fees.

### E.    Relative Merits of the Parties' Positions

Mr. Peck concludes that he is entitled to attorneys' fees because he succeeded on the merits. *See* Pl.'s Mem. at 14. Mr. Peck argues that his success is heightened by the fact that the D.C. Circuit Court reached its opinion even after applying a deferential standard of review and because the Circuit Court deemed frivolous Defendants' secondary argument that Mr. Peck was barred under *res judicata* from repleading Count II as an ERISA claim after he voluntarily dismissed Count II as a state contract claim. *See id.* SELEX does not dispute the mandate from the Circuit Court but disagrees with Mr. Peck's characteristic of Defendants' claims as frivolous stating that "reasonable minds clearly differed on the relevant legal questions ...." *See* SELEX Opp. at 11.

The final *Hummell* factor "focuses on 'the relative merits of the parties' legal arguments and factual contentions.'" *Risteen*, 2003 WL 22011766, at *5 (quoting *Eddy*, 59 F.3d at 209). Courts in this district, however, have not interpreted this factor "to require simply that movant prevailed on every claim [rather] courts have required the moving party's positions to be 'substantially warranted' to weigh in favor of awarding attorney's fees." *Clark*, 59 F. Supp. 3d at 121 (citations omitted). "[A]lthough the moving party's positions must be 'substantially

warranted,' courts have not required that the non-moving party's arguments be 'devoid of merit.'" *Id.*

The D.C. Circuit's ruling makes clear that Mr. Peck's position succeeded on the merits to warrant an award of attorneys' fees. Thus, this factor weighs in favor of granting Mr. Peck's pending Fee Petition. Because the second, third, and fourth *Hummell* factors also weigh in favor of such an award, the undersigned recommends that the trial judge find that Mr. Peck is entitled to attorneys' fees.

## II. Reasonableness of Fees

Having found that Mr. Peck is entitled to attorneys' fees, the undersigned looks to the reasonableness of his counsel's hourly rates and hours billed to determine the appropriate amount of attorneys' fees to recommend.

### A. Hourly Rates

Mr. Peck requests that his attorneys, William R. Wilder ("Mr. Wilder") and Stephen J. Feinberg ("Mr. Feinberg"), be compensated at rates commensurate to the USAO Laffey Matrix, or at hourly rates of $595 and $637 respectively. *See* USAO Attorneys' Fees Matrix – 2015-2020, https://www.justice.gov/usao-dc/page/file/1189846/download (last visited Nov. 16, 2020) ("USAO Laffey Matrix"). Both attorneys work at Baptiste & Wilder, P.C. (the "Firm"), which almost exclusively represents labor organizations under the National Labor Relations Act, the Railway Labor Act, and related federal labor laws, including the Labor-Management Reporting and Disclosure Act and ERISA. *See* ECF No. 83-3 (Declaration of William R. Wilder) ("Wilder Decl.") ¶¶ 1, 3; ECF No. 83-2 (Declaration of Stephen J. Feinberg) ("Feinberg Decl.") ¶ 1. Mr. Wilder, who has worked at the Firm since 1997, including work on ERISA matters, seeks an hourly rate consistent with an attorney having between 21–30 years of experience pursuant to the

USAO Laffey Matrix, while Mr. Feinberg, who has worked in labor law for 33 years, including work on ERISA matters, seeks an hourly rate consistent with an attorney having over 31 years of experience. *See* Wilder Decl. ¶ 1; Feinberg Decl. ¶¶ 1–7; USAO Laffey Matrix.

Mr. Peck claims that the rates requested are appropriate because they are significantly less than the rates, which he could have sought on behalf of his attorneys, pursuant to another index, the "LSI Laffey Matrix."[5] *See* Pl.'s Mem. at 19. SELEX disagrees that rates commensurate with the higher LSI Laffey Matrix would be appropriate to award but notes that this issue is not before the Court because Mr. Peck has not sought compensation for his attorneys based on that higher matrix, and SELEX does not challenge the rates that Mr. Peck requests otherwise. *See* SELEX Opp. at 17–18. The undersigned agrees that because the issue of which matrix to apply is not properly before the Court, it need not determine whether it is reasonable to award hourly rates commensurate to the LSI Laffey Matrix as opposed to the USAO Laffey Matrix.

When determining the reasonableness of the hourly rates requested, courts look to the attorneys' "skill, experience, [and] reputation" as well as the "complexity of the case they handled" compared to "the prevailing market rates in the community." *See Flynn*, 624 F. Supp. at 130 (citation omitted). In this ERISA action, it is reasonable to compensate attorneys at rates commensurate with the USAO Laffey Matrix which courts have used to establish the prevailing market rate for complex civil litigation. *See Serv. Emps. Int'l v. Castle Hill Healthcare*

---

[5] The LSI Laffey matrix updates the original Laffey matrix to account for inflation by using the Legal Services Index of the Nationwide Consumer Price Index, whereas the USAO Laffey matrix updates the Laffey matrix using the All-Items Consumer Price Index for the Washington, D.C. area. *See Salazar v. Dist. of Columbia*, 809 F.3d 58, 62 (D.C. Cir. 2015); *Eley v Dist. of Columbia*, 793 F.3d 97, 101 (D.C. Cir. 2015). LSI Laffey rates are higher than USAO Laffey rates. *See Eley*, 793 F.3d at 101–102.

*Providers, LLC*, 234 F. Supp. 3d 89, 92 n.2 (D.D.C. 2017); *SEIU Nat'l Indus. Pension Fund v. Bristol Manor Healthcare Ctr., Inc.*, No. 12-1904 (RC), 2016 WL 3636970, at \*4 (D.D.C. June 30, 2016); *see generally Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *rev'd on other grounds*, 746 F.2d 4 (D.C. Cir. 1984) (creating *Laffey* Matrix).  Thus, based on the declarations submitted by Mr. Wilder and Mr. Feinberg regarding their biographical information, the undersigned finds that Mr. Peck's requested rates for each of his attorneys, at $595 and $637 respectively, are appropriate.

> B.    *Reasonable Hours*

Mr. Peck seeks compensation for 684.97 hours of work performed by his attorneys related to his ERISA claim, 549.37 hours of which is allocated to Mr. Feinberg and 135.6 hours of which is allocated to Mr. Wilder.[6]  *See* Pl.'s Mem. at 1; ECF No. 83-4 (Pl.'s Ex. 3, Billing Administrator Summary).  SELEX urges this Court to deny any award of attorneys' fees altogether, but in the alternative, argues that Mr. Peck should be awarded no more than $192,782.17 for fees related to his ERISA claim.  *See* SELEX Opp. at 1, 19; ECF No. 87-1 (SELEX Ex. A).  Specifically, SELEX argues that: (1) Mr. Peck inappropriately requests fees for work performed outside the times when he had a viable ERISA claim; (2) Mr. Peck inappropriately requests fees for work related to his two common law claims and general work on the case; and (3) the billing records submitted by Mr. Peck include vague and unreasonable billing entries.  *Id.* at 12–16.

---

[6] Mr. Peck's Supplemental Request also seeks to compensate his attorneys for 67.35 additional hours spent on work dedicated to this Fee Petition, which the undersigned addresses separately below.  *See* Pl.'s Supp. Mot. ¶¶ 6–7; *see also* SELEX Opp. 2 ¶¶ 5–12.

1. *Periods of Time When Fees are Compensable*

Mr. Peck seeks compensation for work completed by his attorneys prior to July 30, 2013, which is the date when he filed his motion to replead Count II as an ERISA claim, and seeks compensation for work performed by his attorneys after his ERISA claim was dismissed on summary judgment. *See* Pl.'s Mot. to Amend; ECF No. 52 (Memorandum Opinion); ECF No. 83, Attachments 5–6 (Pl.'s Exs. 4–5). SELEX opposes Mr. Peck's request for compensation during these two periods. For the following reasons, the undersigned finds that fees incurred during these two periods are compensable.

i. Fees Prior to July 30, 2013

SELEX argues that Mr. Peck is not entitled to payment for work completed prior to July 30, 2013, or "the inception of [amended] Count II" because any fees incurred prior to this date constitute "'pre-litigation attorneys' fees' or legal fees incurred during administrative proceedings," which are non-compensable. SELEX Opp. at 12–13 (citing *Finks*, 2009 WL 2230899, at *6). Assuming July 30, 2013 is the "inception date" for Mr. Peck's ERISA claim, a position that does not appear to be wholly supported by the record,[7] applicable law does not require the exclusion of all "pre-litigation" fees incurred prior to that date, because not all "pre-litigation" fees are non-compensable. In *Finks*, the court made clear that only work performed on prelitigation *administrative proceedings* is non-compensable. *Finks*, 2009 WL 2230899, at *1, 8 (noting that "Plaintiff ... attempts to recover attorney fees, which include fees incurred during administrative (pre-litigation) and judicial proceedings" and holding that "the Plaintiff is not allowed to recover legal fees incurred during administrative proceedings."). Beyond this, the

---

[7] As Mr. Peck notes, litigation on his ERISA claim arguably began on January 17, 2013 when SELEX removed this case from the Superior Court on preemption grounds. *See* Pl.'s Reply at 9 (citing Notice of Removal).

court has not addressed what constitutes non-compensable "pre-litigation" fees, outside the context of fees related to administrative proceedings.  *Id.* at *6–7.

However, the Ninth Circuit, in *Cann v. Carpenters' Pens. Tr. fund for N. Cal.*, expressly suggested that "some work prior to filing the complaint, such as conferences with the client, would be part of the attorneys' fees for the action rather than the administrative appeal."  989 F.2d 313, 315 (9th Cir. 1993); *see also Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 987 (9th Cir. 2001) (noting that ERISA's fee-shifting provision under 29 U.S.C. § 1132(g)(1) does not prohibit fees "for any work done prior to the date [a plaintiff] file[s his] complaint."). Other district courts also have granted "pre-litigation" fees for work related to the district court action.  *See, e.g.*, *Colby v. Assurant Emp. Benefits*, 635 F. Supp. 2d 88, 99–100 (D. Mass. 2009) ("Time spent researching and drafting the complaint, however, is properly considered as part of the litigation in the District Court, even though it occurred prior to filing.") (citations omitted); *Peterson v. Continental Cas. Co.*, 282 F.3d 112, 121 n.5 (2d Cir. 2002) (holding that prevailing ERISA plaintiff was "entitled to collect a reasonable amount for fees and costs incurred in initiating suit in the District Court."); *Monnier v. Hartford Fin. Servs. Grp., Inc.*, No. 8:08CV491, 2010 WL 1233833, at *3 (D. Neb. Mar. 23, 2010) ("Time spent researching and drafting the complaint, however, is properly considered as part of the litigation, even though it occurred prior to filing.") (citations omitted); *Matschiner v. Lewis*, No. 8:07CV435, 2009 WL 995147, at *3–4 (D. Neb. Apr. 13, 2009), *rev'd on other grounds* 622 F.3d 885 (8th Cir. 2010) (holding Defendant should pay fees for prelitigation work related to the action brought in district court, that were not incurred in administrative proceedings); *Hedley-Whyte v. Unum Life Ins. Co. of Am.*, No. 94-11731-GAO, 1996 WL 208492, at *4 n.5 (D. Mass. Mar. 6, 1996) ("This Court can identify no sound reason, however, based on the statutory language, why a court lacks

discretion to award fees and costs for work appropriately contributing to the prosecution of the action just because they were incurred prior to the filing date.").

Mr. Peck may properly seek fees for work performed prior to July 30, 2013, provided that the relevant work contributed to the district court action's ERISA claims and did not arise from administrative proceedings. *See* 29 U.S.C. § 1132(g)(1). The analysis below in Parts 2 and 3 will address SELEX's objections that are based on the nature and reasonableness of the work performed (as opposed to its timing), but it bears noting that in this contested time period Mr. Peck seeks compensation for his counsel's work on: legal research and conferences regarding ERISA issues, *see* ECF No. 83, Attachment 6 (Pl. Ex. 5) at 1–2; and preparing discovery and drafting and reviewing a scheduling order, *see* ECF No. 83, Attachment 5 (Pl. Ex. 4) at 1–2. Mr. Peck has also excluded from his Fee Petition his counsel's work on "Non-ERISA" issues during this contested time such as drafting the complaint and researching certain issues. *See* ECF No. 83, Attachment 11 (Pl. Ex. 10). However, after reviewing Mr. Peck's billing records, it appears that a portion of the hours for which Mr. Peck seeks compensation consist of hours spent drafting letters to the Plan's administrative committee. From April 4, 2013 to July 9, 2013, Mr. Peck's counsel billed 6.8 hours related to work described as an "ERISA claim letter" and "appeal letter." *See* ECF No. 83, Attachment 6 (Pl.'s Ex. 5) at 2; *see also* Pl.'s Reply at 13. As noted, work on administrative proceedings prior to litigation is not entitled to fee-shifting. Accordingly, the undersigned recommends subtracting these hours from Mr. Peck's award of attorneys' fees, specifically 3.9 hours of work by Mr. Feinberg and 2.9 hours of work by Mr. Wilder. The undersigned recommends that the remaining claim for fees for work predating July 30, 2013, be compensated.

ii.  <u>Fees Incurred Between March 24, 2016 and July 11, 2017</u>

On March 24, 2016, Judge Leon dismissed Mr. Peck's ERISA claim on summary judgment, and over a year later, on July 11, 2017, Mr. Peck moved for reconsideration of that decision.  *See* ECF No. 52 (Memorandum Opinion); ECF No. 65 (Plaintiff's Motion for Reconsideration) ("Pl.'s Mot. Reconsideration").  SELEX argues that Mr. Peck is not entitled to fees incurred from March 24, 2016 to July 11, 2017, "while there was no extant claim allowing for the recovery of attorneys' fees."[8]  SELEX Opp. at 12–13.  The billing records submitted by Mr. Peck show that during this period, Mr. Peck's counsel billed approximately 26.9 hours for work related to mediation and approximately 43.4 hours on research, writing, and conferences related to "ERISA reconsideration motion."  *See* ECF No. 83, Attachment 5 (Pl.'s Ex. 4) at 9–10 (26.9 hours billed from September 12, 2016 to October 6, 2016); ECF No. 83, Attachment 6 (Pl.'s Ex. 5) at 5 (43.4 hours billed from March 24, 2016 to July 11, 2017).  Mr. Peck argues that fees related to court-ordered mediation are compensable because the ultimate likelihood of success on Mr. Peck's ERISA claim factored into negotiations.  *See* Pl.'s Reply at 13–14.  Mr. Peck further argues that all other fees incurred during this period are compensable because the question of whether Mr. Peck's termination was for "cause" remained a central issue to the litigation of Counts I and III.  *See* Pl.'s Reply at 10.

The work that Mr. Peck's counsel completed after Mr. Peck's ERISA claim was dismissed on summary judgment and before he sought reconsideration on this ruling is compensable.  ERISA gives courts discretion to award fees "[i]n any *action* under this subchapter ...."  29 U.S.C. § 1132(g)(1) (emphasis added).  Thus, work done throughout the

---

[8]  SELEX has similarly unsuccessfully argued that Mr. Peck be denied prejudgment interest on his ERISA claim for the same period.  *See* ECF No. 78 (Defendants' Memorandum Regarding Entry of Judgment on Count II) at 4–5; September 6, 2019 Minute Order.

entire course of the underlying action is compensable, provided that it relates to Mr. Peck's
ERISA claim.  Specifically, the 26.9 hours spent during mediation to resolve all claims alleged in
this case, even after Mr. Peck's ERISA claim was dismissed on summary judgment, is
compensable given that the possibility of a successful appeal of Mr. Peck's ERISA claim
affected the valuation of the case.  Research and work largely related to Mr. Peck's motion for
reconsideration also is plainly compensable because it directly relates to the litigation of his
ERISA claim.

### 2. *Fees that Relate to Overlapping Claims*

Mr. Peck acknowledges that work completed on the state law claims raised in Counts I
and III are not eligible for fee-shifting.  *See* Pl.'s Mem. at 15.  Accordingly, Mr. Peck has
separated billing entries from his counsel's contemporaneous billing records into nine categories,
six of which Mr. Peck deems compensable, and three of which are non-compensable.  *Id.* at 4.
Compensable categories include billing records for tasks related to what Mr. Peck describes as:
(1) tasks performed during litigation in the district court necessarily taken to litigate the ERISA
claim, regardless of overlap with litigating the two state law contract claims, or "General"; (2)
tasks performed prior to appeal on work exclusively related to Count II's ERISA claim, or
"ERISA"; (3) tasks performed prior to appeal on research, writing, and preparing portions of Mr.
Peck's opposition to SELEX's summary judgment motion on Count I severance and Count III
relocation agreement that responded to the argument that Mr. Peck's termination was for cause,
or "Cause"; (4) tasks performed during the appeal of this case to the Circuit Court to litigate the
ERISA claim regardless of its overlap with litigating the two state law contract claims, or
"Appeal-General"; (5) tasks performed for written and oral appellate arguments exclusively
related to the ERISA claim, or "Appeal-ERISA Count II"; and (6) tasks spent on litigation after

the Circuit Court issued its decision that relate to a dispute over prejudgment interest on the ERISA award and filing a stipulated judgment order, or "Post Appeal-ERISA." *See id.* at 4–6; *see also* ECF No. 83, Attachments 5–10 (Pl.'s Exs. 4–9).  The three non-compensable categories include billing records for tasks related to what Mr. Peck describes as: (1) tasks performed prior to preparing for trial on state law claims under Counts I and III, exclusively, or "Non-ERISA"; (2) tasks performed during trial on state law claims under Counts I and III, exclusively, or "Non-ERISA Trial"; and (3) tasks related exclusively to Mr. Peck's unsuccessful appeal of Count I's severance policy claim, or "Appeal-Count I".  *See* Pl.'s Mem. at 7; ECF No. 83, Attachments 11–13 (Pl.'s Exs. 10–12).

SELEX contends that Mr. Peck's nine billing categories, especially those described as "General," "Cause," and "Appeal General," inherently show that Mr. Peck is trying to seek compensation for non-compensable fees.  *See* SELEX Opp. at 14.  SELEX argues that these categories put a gloss over billing records that are otherwise insufficient to establish their relation to Mr. Peck's ERISA claim.  *Id.*  For example, SELEX notes that tasks described under the "Cause" category inappropriately include time spent litigating Mr. Peck's termination for cause as it relates to his eligibility for severance pay under Count I with time spent litigating the issue of whether the Plan's interpretation of "cause" for purposes of providing deferred compensation was arbitrary and capricious under Count II.  *Id.* at 14–15 & n.8–12.  SELEX reasons that the "facial similarity" between Counts I and II "does not justify applying every 'cause' time entry to the ERISA claim."  *Id.* at 14 n.8.  Likewise, SELEX argues that research on Mr. Peck's status as an "at will" employee, which was billed under the "Cause" category is inappropriate because the issue of whether Mr. Peck was an at-will employee had no bearing on his ERISA claim.  *See id.* at 15.  SELEX also asserts that certain time billed under "Appeal-General" is outside the scope

of tasks that relate to the ERISA claim. *See id.* at 14 & n.9. Finally, SELEX states that the high number of hours Mr. Peck requests for each of his counsel compared to the overall number of hours billed in this case suggests that he is inherently padding his Fee Petition with non-compensable tasks. *See id.* at 15–16.

For the following reasons, the undersigned does not recommend that the Court categorically exclude tasks billed under the six categories of billing records that Mr. Peck has identified as compensable.

i.  <u>"Cause" was a Common Factual Issue in this Case</u>

The fact that some of the tasks billed under the six compensable categories partially relate to work performed on Counts I and III does not automatically make them non-compensable, because whether Mr. Peck's termination was "for cause" was a common factual issue that affected all claims in this case. Where a case involves "distinctly different claims for relief that are based on different facts and legal theories," the work done on claims meriting attorneys' fees should be separated from claims that do not merit attorneys' fees. *Hensley v. Eckerhart*, 461 U.S. 424, 434–35 (1983)[9]; *see also Morgan v. Dist. of Columbia.*, 824 F.2d 1049, 1066 (D.C. Cir. 1987). However, when a case raises multiple claims based on "a common core of facts ... or related legal theories" such cases cannot be viewed as a series of discrete claims because "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley*, 461 U.S. at 435. In such cases, when determining fees, "the district court should focus on the significance of the

---

[9] The Supreme Court's holding in *Hensley* "was crafted in the § 1988 context, ... [but] lower courts have adopted its instructions in a wide array of statutory settings," including ERISA. *George Hyman Const. Co. v. Brooks*, 963 F.2d 1532, 1535–36 (D.C. Cir. 1992) (citations omitted).

overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. *See id.* Both the Supreme Court and this Circuit have acknowledged that "'there is no certain method of determining when claims are related or unrelated.'" *Williams v. First Gov't Mortg. & Inv'rs Corp.*, 225 F.3d 738, 746 (D.C. Cir. 2000) (quoting *Hensley*, 461 U.S. at 437 n.12 (internal quotations omitted)). Only a claim that is "distinct in all respects" from the successful claim, should be excluded in considering the amount of a reasonable fee. *Hensley*, 461 U.S. at 440.

In *Turgeon v. Howard University*, the D.C. Circuit applied the "*Hensley* analysis" to a case with both federal and common law claims, in which only the former allowed for fee shifting, and rejected the defendants' argument that the plaintiffs should parse out time spent on each claim. No. 81-2973, 1983 WL 603, *4–5 (D.D.C. 1983). The Court emphasized that the complaint sought recovery under various legal theories that essentially alleged the same injury. *See id.* The plaintiff prevailed on her claims of employment discrimination under federal law, which involved essentially the same injury that gave rise to the plaintiff's common law claims. *See id.* The court affirmed that, "no reduction in fee is appropriate where the issue was all part and parcel of one matter, but only when the claims asserted 'are truly fractionable.'" *See id.* (citing *Copeland*, 641 F.2d at 892 n.18 (1980) (internal quotations omitted)).

Like *Turgeon*, SELEX's argument that Mr. Peck must separate the time spent on the "cause" issue for his state law claims from time spent on the "cause" issues for his ERISA claim ignores the overlap between the facts underlying his claims. Mr. Peck alleged that he was denied payment of employee benefits, including severance pay and relocation expenses, along with deferred compensation, because SELEX characterized his termination as "for cause." Whether Mr. Peck's termination was "for cause" also was a significant disputed issue for the state law

claims.   SELEX sought summary judgment on Count I by asserting that Mr. Peck was
terminated for cause, as defined under the terms of the Plan.  *See* SELEX Summary Judgment
Memo. at 12 (¶ 44), 15–16.  Similarly, SELEX asserted that Mr. Peck's termination for cause
relieved it of liability under Count III, because the relocation contract, which required Mr. Peck
to remain employed with SELEX for two years, did not occur when Mr. Peck refused to accept
the new assignment in Kansas.  *See* Pl.'s Reply at 10–11 (citing SELEX Summary Judgment
Memo. at 11–12 (¶¶ 42, 43), 17).

The undersigned likewise disagrees with SELEX's distinction that research into Mr.
Peck's employment as an "at-will" employee had no relevance to Mr. Peck's ERISA claim.  The
facts relevant to determining whether Mr. Peck's termination was for cause under Count II also
were relevant to determine whether Mr. Peck was entitled to severance pay and relocation
expenses or whether he was terminable at-will.  *See* Pl.'s Reply at 11 n.6.

## ii.  "Appeal-General" Category

To the extent that SELEX's suggestion that time billed under "Appeal-General" should
be excluded is based on the contention that Mr. Peck failed to adequately distinguish the portion
of the appellate work that involved non-ERISA claims, the undersigned disagrees.  *See* SELEX's
Opp. at 14 n.9.  As an initial matter, work on Mr. Peck's appeal to the D.C. Circuit necessarily
related to his ERISA claim because he appealed both this Court's decision as to Count I
following the bench trial, and this Court's decision as to Count II's ERISA claim following
summary judgment.  *See* Notice of Appeal.  It is unreasonable to presume that drafting the
statement of facts for Mr. Peck's appeal — the example SELEX highlights in its opposition
memorandum — has no connection to the ERISA claims, as the fact section of the brief provides
context for all claims, some of which shared a common factual nucleus.  *See* SELEX's Opp. at

14 n.9.  Further Mr. Peck properly seeks compensation for time spent on common appellate

litigation tasks that had to be performed independent of the substantive disputed issues, such as

preparing a Joint Appendix.  *See* Pl.'s Reply at 15.

### iii. Ratio

Finally, SELEX's ratio of hours argument does not provide a sufficient basis to disqualify

Mr. Peck's six categories of compensable time.  Although Mr. Peck has requested that this Court

award Mr. Feinberg and Mr. Wilder compensation for nearly seventy and sixty percent of the

total number of hours that each has respectively billed on this case, these ratios are unsurprising

given that so much of Mr. Peck's case is based on a common core of facts with "cause" being a

primary issue.  Further, the proportionality of the fees sought in relation to the number or

monetary value of claims on which a party prevailed is not determinative of the appropriate

award.  *See Williams*, 225 F.3d at 746–47 ("[T]he Supreme Court [has] rejected a 'mathematical

approach' ... noting that '[t]here is no precise rule or formula' for determining the reasonableness

of the relation between the fee requested and the relief obtained.") (citing *Hensley*, 461 U.S. at

436) (internal quotations omitted)); *Radtke v. Caschetta*, 254 F. Supp. 3d 163, 171–72 (D.D.C.

2017) (declining to reduce fee award to be proportionate to damages and awarding $307,980 in

fees in a FLSA case in which the plaintiffs recovered in approximately $6000 in damages

including interest); *see also Fishman v. Clancy*, 763 F.2d 485, 491 (1st Cir. 1985) (affirming an

award of approximately 80% of plaintiff's fees, where plaintiff succeeded on only one of three

related claims).

### 3. Allegedly Vague and Unreasonable Billing Entries

SELEX also argues that billing records submitted by Mr. Peck include vague or general

time entries and that the hours requested for certain tasks appear unreasonable.  *See* SELEX Opp.

at 15. "Where the documentation of hours is insufficient, the district court may reduce the amount accordingly." *Hensley*, 461 U.S. at 433. If the court determines fees should be reduced, it may do so "in the form of a calculation of hours or an across-the-board reduction." *Zervos v. Verizon N.Y., Inc.*, No. 01CIV.0685(GBD)(RLE), 2002 WL 31553484, at *4 (S.D.N.Y. Nov. 13, 2002); *see also In re Agent Orange Prod. Lib. Lit.*, 818 F.2d 226, 237–238 (2d Cir. 1987) (finding that the district court has the authority to make across-the-board reduction in hours "as a practical means of trimming fat from a fee application" and stating that other circuit courts have similarly held the same) (citing *Copeland v. Marshall*, 641 F.2d 880, 903 (D.C. Cir. 1980)). Courts apply across-the-board reduction to the number of hours requested where billing records contain vague or inadequate, entries or other inefficiencies. *See Marcin v. Reliance Standard Life Ins. Co.*, 199 F. Supp. 3d 94, 105 (D.D.C. 2016), *aff'd*, 861 F.3d 254 (D.C. Cir. 2017) (reducing the number of hours requested by forty percent to account for insufficient billing entries).

The undersigned agrees that some hours are either unreasonable or insufficiently described but finds the requested fees reasonable and sufficiently documented on balance. For the reasons explained below, the undersigned recommends that the Court reduce the fees sought by ten percent — after subtracting the non-compensable administrative hours identified above — to correct for these deficiencies.

### i.   Allegedly Vague and Generic Billing Entries

SELEX points to billing entries described only as "Phone conference with Feinberg," "File Organization," "Abstract Depositions," and "Conference with SJF re: inquiry" as examples of those that are unacceptably vague. *See* SELEX Opp. at 15; *see also* ECF No. 83, Attachment 5 (Pl.'s Ex. 4). "File organization" is a regular part of managing a case and does not appear

unreasonably vague.  *See Luciano v. Olsten Corp.*, 925 F. Supp. 956, 966 (E.D.N.Y. 1996)

(awarding compensation for non-legal work that might be performed by a junior associate at a

large firm such as cite checking, file organization, telephone calls to the Clerk of the Court and

proofreading at a lower hourly rate).  Similarly, a billing entry described as "Abstract

depositions" is not unreasonably vague given that it reasonably describes the task of abstracting a

deposition for purposes of litigation.  *See First Midwest Bank v. Chicago*, 337 F. Supp. 3d 749,

792 (N.D. Ill. 2018) (noting that abstracting depositions is a task often performed by legal

assistances).  However, as discussed in more detail below, while these billing entries are not

unreasonably vague, the undersigned finds that Mr. Peck's counsel should not have billed for

these tasks at their full hourly rates.  *See Merrick v. Dist. of Columbia*, 134 F. Supp. 3d 328, 341

(D.D.C. 2015); *Commodity Futures Trading Comm'n v. Trade Exch. Network Ltd.*, 159 F. Supp.

3d 5, 10 (D.D.C. 2015).

The billing entries described solely as "Phone conference with Feinberg" billed on

September 24, 2013 by Mr. Wilder, and "Conference with SJF re: inquiry" billed on March 18,

2014 by Mr. Wilder, are too vague to determine the reasonableness of such tasks.  ECF No. 83,

Attachment 5 (Pl.'s Ex. 4) at 5–6.  In order to be reliable and clear, attorneys should record the

subject matter of a conference or phone call.  *See, e.g.*, *Hensley*, 461 U.S. at 437 & n.12; *In re

Meese*, 907 F.2d 1192, 1204 (D.C. Cir. 1990); *Shaw v. Dist. of Columbia*, 210 F. Supp. 3d 46,

52–53 (D.D.C. 2016); *Bennett v. Castro*, 74 F. Supp. 3d 382, 405 (D.D.C. 2014).  Mr. Peck

argues that the surrounding billing entries provide enough context for the missing subjects for

each entry.  *See* Pl.'s Reply at 16.  But the reasonableness of the hours requested must be

established to high degree of certainty and speculating as to the missing information gleamed

from the context of the surrounding billing entries does not satisfy that standard.  Furthermore,

"the judicial role is not to comb through endless lists of billing entries to gather data the parties have not seen fit to make clear." *12 Percent Logistics, Inc.*, 2020 WL 1429904, at *8 (quoting *Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 82 F. Supp. 3d 396, 414 (D.D.C. 2015)). "The absence of any subject–matter description ... is not acceptable." *Bennett*, 74 F. Supp. 3d at 406.

### ii.  Allegedly Unreasonable Billing Entries

SELEX also asserts that the billing records submitted by Mr. Peck include an unreasonable number of hours for otherwise straightforward tasks. If hours are not reasonably expended, they should be excluded. *See Hensley*, 461 U.S. 434. "Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Bd. Of Trs. of Hotel and Rest. Employees Loc. 25*, 136 F.3d at 800 (D.D.C. 1998) (citations omitted); *see also Hensley*, U.S. at 434 ("Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.") (quoting *Copeland*, 641 F.2d at 891 (emphasis in original)); *12 Percent Logistics, Inc.*, 2020 WL 1429904, at *7 ("Fees are not recoverable for nonproductive time ....") (quoting *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1327). SELEX highlights that on February 21 and February 22, 2018, Mr. Feinberg billed 5.5 hours on what appears to be legal research into the appellate panel, on August 14, 2013, Mr. Feinberg billed 1.5 hours on unspecified "ERISA research," and in June and July of 2017, Mr. Feinberg and Mr. Wilder spent 32.7 hours on work related to the preparation of a motion for reconsideration. *See* SELEX Opp. at 16; ECF No. 83, Attachment 9 (Pl.'s Ex. 8) at 3; ECF No. 83, Attachment 6 (Pl.'s Ex. 5) at 3, 5–6.

Some of the hours that SELEX specifically contests are reasonable.  It is not uncommon for attorneys to research past rulings by judges on an appellate panel, and as such, the 5.5 hours that Mr. Feinberg billed for such research on February 21 and 22, 2018 are not excessive.  *See* ECF No. 83, Attachment 9 (Pl.'s Ex. 8) at 3.  Nor is the hour that Mr. Weinberg similarly billed for tasks including reviewing the panel judges on March 13, 2018.  *See* ECF No. 83, Attachment 8 (Pl. Ex. 7) at 4.  SELEX has not provided any case law or persuasive arguments to the contrary.  The 1.5 hours billed on August 14, 2013 for unspecified "ERISA Research" also are reasonable.  *See* ECF No. 83, Attachment 6 (Pl.'s Ex. 5) at 3.  A review of the billing records shows that around August 14, 2013, Mr. Peck's counsel was briefing a motion to amend the complaint, and therefore, general research into ERISA seems reasonable.  *See* Pl.'s Mot. to Amend; ECF No. 23 (Plaintiff's reply memorandum in support of motion to amend) (filed on August 20, 2013).

Although the 32.7 hours that Mr. Peck's counsel collectively spent in June and July of 2017 related to the preparation of a motion for reconsideration seem high in comparison to the length of the motion, the undersigned does not recommend reducing the award specifically for those hours.  *See* ECF No. 83, Attachment 6 (Pl.'s Ex. 5) at 5–6.  SELEX emphasizes that Mr. Peck's motion for reconsideration was fourteen pages and contained arguments that were not novel and suggests that attorneys with extensive experience in labor law should have been able to complete the motion in less time.  *See* SELEX Opp. at 16; *see generally* Pl.'s Mot. Reconsideration; Feinberg Decl. ¶¶ 1–7 (describing Mr. Feinberg's legal experience); Wilder Decl. ¶ 1 (describing Mr. Wilder's legal experience).  In denying Mr. Peck's motion for reconsideration, Judge Leon noted that Mr. Peck's arguments largely recited ones that he had previously made.  *See* ECF No. 70 (Memorandum Opinion) at 15.  However, drafting a

reconsideration motion requires attorneys to analyze the unsuccessful motion, decide how to present their reconsideration arguments, and the length of the finished product does not necessarily reflect the effort its preparation required.  Accordingly, the 32.7 hours are reasonable. *See Bristol Manor Healthcare Ctr., Inc.*, 2016 WL 3636970, at *5 (finding 26.7 hours billed for summary judgment motion that was "a routine motion that is similar to other motions filed in similar cases" to be reasonable and a "modest amount of time").

However, the time billed for preparing the amended complaint is unreasonably high.  Mr. Peck's counsel billed more than twenty hours for work preparing his amended complaint.  *See* ECF No. 83, Attachment 5 (Pl.'s Ex. 4) at 2–3.  Yet, the amended complaint largely mirrors the initial complaint except for a two-paragraph explanation on jurisdiction and an added sixteen-paragraph ERISA claim.  *Compare* Compl., *with* Amend. Compl.  Accordingly, those hours are not reasonable.  *Cf. Hall & Assocs. v. United States Environmental Protection Agency*, 2016 WL 10746643, *6 (D.D.C. Mar. 7, 2016) (finding 43 hours billed for preparing a FOIA complaint excessive and reducing compensable hours to 24).

SELEX has objected to numerous other time entries as either unreasonable or excessive in the chart attached to its opposition memorandum.  *See* ECF No. 87-1 (SELEX Ex. A). However, upon review, those entries do not seek an excessive number of hours for the tasks described.  Cumulatively, they generate a significant number of hours, but that is not out of step with the length of the litigation and the procedural steps Mr. Peck took prior to prevailing.

### iii.  Other Alleged Inefficiencies

A review of the billing records also shows that Mr. Peck's counsel frequently billed for time spent on basic legal, administrative, and clerical tasks at senior attorney hourly rates, which is inefficient and unreasonable given that most of these tasks could have been conducted by

34

associate attorneys or support staff who bill at lower hourly rates.  For example, the 0.8 hours

that Mr. Feinberg billed on October 29, 2013 to complete "File Organization," although

necessary to litigation, is a clerical task that is not entitled to the same compensation as legal

work.  *See* ECF No. 83, Attachment 5 (Pl.'s Ex. 4) at 5; *Taylor v. Dist. of Columbia*, 205 F.

Supp. 3d 75, 91 (D.D.C. 2016) (noting that large law firms consider this work "non-billable

overhead") (citing *Merrick*, 134 F. Supp. 3d at 341); *Ramey v. Dist. 141, Int'l Ass'n of*

*Machinists & Aerospace Workers*, No. 99 CV 4341 (ERK) (RML), 2005 WL 8157425, at *5

(E.D.N.Y. May 24, 2005) (finding fees should be reduced by five percent for clerical work even

though the court recognized that these tasks may be "necessary" as a part of "trial preparation").

Likewise, the nine hours that Mr. Feinberg spent to abstract depositions in November 2013 is

also considered a basic legal or administrative task that is often left to junior associates or

paralegals and should not have been billed at Mr. Feinberg's $637 hourly rate.  *See* ECF No. 83,

Attachment 5 (Pl.'s Ex. 4) at 5–6; *First Midwest Bank*, 337 F. Supp. 3d at 792 (reducing the

hourly rate billed for the tasks of providing deposition abstracts because such tasks are generally

left to legal assistances who bill their time at a lower rate than most attorneys).  Other examples

of clerical work billed by Mr. Peck's counsel at their senior hourly rates include serving

discovery, scheduling deposition dates, and filing papers with the court.  *See generally* ECF No.

83, Attachments 5–10 (Pl's Ex. 4–9, Billing Records); *DeLa Cruz v. Dist. of Columbia*, 82 F.

Supp. 3d 199, 207 (D.D.C. 2015) (noting that work billed by the plaintiff's counsel for

scheduling, writing and reviewing emails, confirming meeting dates and reviewing non-legal

documents are clerical rather than legal); *Robinson v. Dist. of Columbia*, 61 F. Supp. 3d 54, 66

(D.D.C. 2014) (noting that tasks such as bates-stamping and reviewing disclosures to ensure

compliance with filing rules do not require any particular legal expertise).

If a boutique firm or solo practitioner does not have as many junior associates and paralegals as a larger firm to perform basic legal, administrative, and clerical tasks that are necessary for litigation, that firm should not be denied fees for doing such work; but that work cannot be compensated at the hourly rate of the senior attorney. *See, e.g.*, *Commodity Futures Trading Comm'n*, 159 F. Supp. 3d at 10 ("Though counsel for the [plaintiff] may not be able to delegate administrative tasks or routine legal research to lower ranking associates, if the [plaintiff] wishes to 'bill' the defendants at [senior attorneys'] hourly rates according to the *Laffey* Matrix, it cannot include minor tasks conducted by counsel that would have been conducted by support staff or junior associates at a law firm."); *Merrick*, 134 F. Supp. 3d at 341 (reducing an attorney's rate "clerical and paralegal-type work"). Accordingly, the significant number of hours spent on basic legal, administrative, and clerical tasks billed by Mr. Peck's counsel at their senior attorney hourly rates is inefficient and warrants a reduction in Mr. Peck's fee request. *See DeLa Cruz*, 82 F. Supp. 3d at 207 (reducing fees by fifteen percent when senior attorneys requested fees for "administrative tasks, which could be handled by a junior associate or paralegal").

In light of the vague, unreasonable, and inefficient billing entries identified above, the undersigned recommends reducing the total number of hours Mr. Peck's counsel submitted in support of his fee request by ten percent across the board. *See generally Marcin*, 199 F. Supp. 3d at 105 (applying forty percent reduction to fee award).

4. <u>Fees on Fees</u>

Mr. Peck has also requested an additional $42,362.25 for attorneys' fees for work that his counsel spent related to this Fee Petition, or "fees on fees", which includes 54.50 hours of work billed by Mr. Feinberg and 12.85 hours of work billed by Mr. Wilder, or 67.35 hours total. *See*

Pl.'s Supp. Mot. ¶¶ 6–7. Mr. Peck asks this Court to compensate his attorneys for their work on this Fee Petition at the same hourly rates awarded to his attorneys in the underlying Fee Petition. *See id.* SELEX does not object to this rate request. *See generally* SELEX Opp. 2. Accordingly, the undersigned recommends that the Court continue to apply the hourly rates of $637 for Mr. Feinberg and $595 for Mr. Wilder when calculating fees awarded for this Fee Petition. *See McNeil v. Dist. of Columbia*, 233 F. Supp. 3d 150, 154 (D.D.C. 2017) ("Neither the Plaintiffs nor the [Defendant has] adequately shown that the fee litigation and underlying proceeding are so distinct ... [to] justify different compensation.").

The parties dispute the reasonableness of the requested "fees on fees." Mr. Peck contends that the fees incurred to prepare the fee petition are reasonable but concedes that if the Court applies an across-the-board percentage reduction to the underlying fee request, it can reduce the "fees on fees" by the same ratio. *See* Pl.'s Supp. Mot. ¶ 10. SELEX proposes that the Court deny any award of fees on fees but agrees that a percentage reduction could be applied to match any such reduction to the underlying fee request. *See* SELEX Opp. 2 ¶¶ 4, 12. SELEX further argues that Mr. Peck has failed to meet a higher burden of showing that his request for fees on fees is reasonable and not excessive. *See id.* ¶¶ 1–12. Specifically, SELEX claims that the supplemental billing entries do not relate to work dedicated to this Fee Petition and are duplicative. *See id.* ¶¶ 7–9. SELEX further argues that any award of fees on fees would result in a windfall for the Mr. Peck's counsel. *See id.* ¶ 5.

In this Circuit, it is "settled" that hours reasonably devoted to a request for fees are compensable. *See Serv. Employees Int'l Union Nat'l Indus. Pension Fund v. Jersey City Healthcare Providers, LLC*, No. 17-1657 (CKK), 2019 WL 2870216, at *5 (D.D.C. July 3, 2019) (citing *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 528 (D.C. Cir.

1985)); *Jones v. Dist. of Columbia*, 153 F. Supp. 3d 114, at 121 (D.D.C. 2015) (reaffirming that "the D.C. Circuit has consistently recognized the 'essential' role that fees-on-fees play in carrying out the goals of statutory fee-shifting provisions.") (citing *Am. Fed'n of Gov't Emps. AFL-CIO, Loc. 3882 v. Fed. Lab. Relations Auth.*, 994 F. 2d 20, 22 (D.C. Cir. 1993); *Kaseman v. Dist. of Columbia*, 444 F.3d 637, 640 (D.D.C. 2006)).  However, fees on fees must be reasonable and not excessive.  *See Boehner v. McDermott*, 541 F. Supp. 2d 310, 325 (D.D.C. 2008). Accordingly, courts "have an obligation to scrutinize the hours spent preparing the fee petitions to ensure that the total is reasonable and does not represent a windfall for the attorneys." *See id.* (citations omitted); *see also Craig v. Dist. of Columbia*, 197 F. Supp. 3d 268, 282 (finding that "an award of over $80,000 for the preparation of this routine fee petition would be excessive."); *Heard v. Dist. of Columbia*, No. 02-0296 CKK, 2006 WL 2568013, at *20–21 (D.D.C. Sept. 5, 2006) (halving the plaintiff's fees on fees request where the "[p]laintiff's counsel was overzealous in their preparation of the Fee Petition").  The Supreme Court has indicated that a court should not award fees on fees for time spent on aspects of the initial fee request that proved unsuccessful.  *See Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163 n.10 (1990).  Thus, courts in this district will typically reduce any award for fees on fees by the same percentage it reduced any award for underlying fees.  *See Cox v. Dist. of Columbia*, 264 F. Supp. 3d 131, 153 n.26 (D.D.C. 2017) (citing *McNeil*, 233 F. Supp. at 163); *Prunty v. Vivendi*, 195 F. Supp. 3d 107, 117 (D.D.C. 2016).

The undersigned recommends that the Court award Mr. Peck compensation for fees on fees.  While a party is not entitled to reimbursement for fees unreasonably incurred in the preparation of a fees-on-fees application, courts have not completely withheld reimbursement of such fees except in rare circumstances, none of which are present in this case.  *See Jones*, 153 F.

Supp. 3d at 122; *see also Means v. Dist. of Columbia*, 999 F. Supp. 2d 128, 136 n.7 (D.D.C.

2013) (denying fees on fees where the petitioner needlessly prolonged litigation or where the

fees requested have "become[] so far removed from the original adjudication that the prevailing

part[y's] claims may be too attenuated."); *see also True the Vote, Inc. v. Internal Revenue

Service*, 2020 WL 5656694, at *14 (D.D.C. Sept. 23, 2020) (finding it appropriate to compensate

the plaintiff's counsel for hours documented in the first and second motion for fees, but not for

hours set forth in the third and fourth motions, describing the latter as a "fees-on-fees-on-fees"

request).  Although the number of hours billed for work on Mr. Peck's Fee Petition slightly

exceed those deemed reasonable in other cases, they are not so excessive that a reduction is

necessary.  *Robinson v. Dist. of Columbia*, 341 F. Supp. 3d 97, 124 (D.C.C. 2018) (finding it

reasonable that counsel spent forty hours on a fee motion); *McNeil*, 233 F. Supp. at 162–63

(granting the plaintiffs' fees on fees request for fifty hours). This Fee Petition was contested, and

SELEX raised broad objections to numerous billing entries; it is not surprising that Mr. Peck's

counsel spent approximately a week and a half's worth of business hours litigating the fee

petition.

　　　The undersigned further recommends a ten percent reduction to the award for fees on

fees, corresponding to the ten percent reduction recommended for the overall fee request.  The

undersigned has reviewed the reasonableness of the supplemental billing records and finds no further reduction is fees to be warranted.  *See* ECF No. 90-1 (Supplemental Billing Records). Awarding ninety percent of the requested fees on fees to Mr. Peck would not constitute an unreasonable "windfall" to his counsel.

### RECOMMENDATION

For the reasons set forth herein, the undersigned recommends the Court GRANT Plaintiff's Motion for Attorneys' Fees and Plaintiff's Supplemental Motion for Attorneys' Fees and award Plaintiff $383,778.80 in attorneys' fees related to his ERISA claim and $38,126.03 in attorneys' fees related to this fee petition, for a total award of $421,904.83 as follows:

FEE PETITION

| Professional | Rate | | Hours | | | Recommended Fee Award |
|---|---|---|---|---|---|---|
| | Requested | Awarded | Requested | Admin | Awarded | |
| Stephen Feinberg | $637.00 | $637.00 | 549.37 | 3.9 | 490.923 | $312,717.95 |
| William Wilder | $595.00 | $595.00 | 135.6 | 2.9 | 119.43 | $71,060.85 |
| **TOTAL** | | | | | | **$383,778.80** |

SUPPLEMENTAL REQUEST

| Professional | Rate | | Hours | | Recommended Fee Award |
|---|---|---|---|---|---|
| | Requested | Awarded | Requested | Awarded | |
| Stephen Feinberg | $637.00 | $637.00 | 54.50 | 49.05 | $31,244.85 |
| William Wilder | $595.00 | $595.00 | 12.85 | 11.565 | $6,881.18 |
| **TOTAL** | | | | | **$38,126.03** |

TOTAL

| | Recommended Fee Award |
|---|---|
| Fee Petition | **$383,778.80** |
| Supplemental Request | **$38,126.03** |
| **TOTAL** | **$421,904.83** |

## REVIEW BY THE DISTRICT COURT

The parties are hereby advised that under the provisions of Local Rule 72.3(b) of the United States District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the report and/or recommendation to which objection is made, and the basis for such objections. The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985).

Date: 11/16/2020                                          Signed: _____

                                                                          Robin M. Meriweather
                                                                          United States Magistrate Judge